OPINION HEADING PER CUR 







                     NO. 12-02-00354-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS


TREVOR DEAN WELCH,                                §     APPEAL FROM THE 114TH
APPELLANT

V.                                                                         §     JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §     SMITH COUNTY, TEXAS





MEMORANDUM OPINION
            Trevor Dean Welch (“Appellant”) appeals his conviction for possession of a controlled
substance, methamphetamine, in an amount of more than 400 grams. Appellant presents five issues
on appeal. We affirm.

Background
            On January 2, 2002, Cherokee County Deputy Sheriff Johnathan Rhodes (“Rhodes”) knocked
on the door of a mobile home owned by Appellant. Rhodes was accompanied to the door of
Appellant’s home by Cherokee County Deputy Sheriff Keith Ratcliff (“Ratcliff”), Constable Frank
Creath of Smith County (“Creath”), Deputy Constable Gerald Jones of Smith County (“Jones”), and
Bullard Police Officer John Walker (“Walker”). Rhodes told Appellant that he was investigating
burglaries of guns in Cherokee County and that he had information that some had been brought to
Appellant’s home. Rhodes asked Appellant if he had any guns in his house. When Appellant
responded in the affirmative, Rhodes asked if he could come in to look at these guns. Appellant 
agreed to allow Rhodes and the other officers to come into his home to look at the guns there. 
            Once Rhodes and the other officers were in Appellant’s residence, they immediately spotted
two guns next to the couch in Appellant’s living room. They questioned Appellant about these guns
and then asked if he had any others in the house. Appellant led the officers through the house where
a total of five loaded guns were found. One of the guns which Appellant retrieved for the officers
was in the bedroom where he had been sleeping with Jana Gayle Linthicum (“Linthicum”) at the
time the officers had knocked on his door. Linthicum was standing in front of a couch in the
bedroom as Appellant led the officers into the room.
            Creath, upon entering the room, noticed a mirror with a pink band around it and a white
powdery line on it. This mirror was on a table just to the right of the couch where Linthicum was
standing. Upon noticing these items, which appeared to be an illegal drug and accompanying drug
paraphernalia, Creath asked Linthicum if there were more drugs in the room. She nodded, pointed
toward a black zipper bag also sitting on the table, and said, “[I]t’s in there.” She then said there
were also drugs under and in the couch where she was standing and in her purse. Finally, she said 
that there was a safe in the closet containing even more drugs. 
            While Rhodes and Ratcliff went with Appellant to look for stolen guns in an adjoining shop
owned by Appellant’s brother, Bobby, Creath and the other officers continued to search the bedroom. 
Creath testified that he lifted the lid off the safe in the closet and discovered methamphetamine, later
determined to be over 400 grams. Upon the return of Rhodes, Ratcliff, and Appellant from the shop,
Appellant was instructed to sit on a couch in the living room with Linthicum, who had been told to
sit there while the methamphetamine and other evidence which she had pointed out to the officers
in the bedroom was being collected and inventoried. Creath had directed another deputy constable
of Smith County, Glen Potter (“Potter”), to join in the efforts of collecting and inventorying the
evidence being seized. This evidence included a total of 423.85 grams of methamphetamine, drug
paraphernalia, and $3,970.00 in cash taken from the couch pointed out by Linthicum. After about
three hours had elapsed after the original knock on Appellant’s door, Appellant and Linthicum were
arrested, given their Miranda


 warnings, and taken to the Smith County Jail. Later, Linthicum and
Appellant were both indicted for possession of a controlled substance, methamphetamine, in the
amount of more than 400 grams. They both elected to be tried before a jury, which found them
guilty of possession of a controlled substance as charged in the indictment. Appellant elected to
have his punishment assessed by the jury and was sentenced to forty years of imprisonment.


 
Appellant timely filed this appeal.

Suppression of Evidence
            In his first three issues, Appellant contends that the trial court abused its discretion in failing
to suppress evidence found in his home during the search on January 2, 2002.
Standard of Review
            In reviewing a trial court’s ruling on a motion to suppress, “the trial court is the sole trier of
fact and judge of the credibility of the witnesses and the weight to be given to their testimony.” State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). The appellate court should give “almost total
deference to a trial court’s determination of the historical facts that the record supports especially
when the trial court’s fact findings are based on an evaluation of credibility and demeanor.” 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). A similar deference should be
accorded the trial court’s rulings on “application of law to fact questions,” also known as “mixed
questions of law and fact,” if the resolution of those ultimate questions turns on an evaluation of
credibility and demeanor. Id. Any “mixed questions of law and fact” which do not rely upon an
assessment of credibility and demeanor should be reviewed de novo. Id.
            In his first issue, Appellant contends that the search leading to the discovery of the
methamphetamine was made without a warrant and without consent. Consent to search is one of the
well-established exceptions to the constitutional requirements of both probable cause and a warrant. 
Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) (citing Schneckloth v. Bustamonte,
412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44, 36 L. Ed. 2d. 854 (1973)). The validity of an alleged
consent to search is a question of fact to be determined from all of the circumstances. Ohio v.
Robinette, 519 U.S. 33, 40, 117 S. Ct. 417, 421, 136 L. Ed. 2d. 347 (1996). The federal constitution
requires the State to prove the validity of the consent by a preponderance of the evidence, while the
Texas Constitution requires the State to show by clear and convincing evidence that the consent was
valid. Guevara v. State, 97 S.W.3d 579, 582 (Tex. Crim. App. 2003). 
            After hearing the evidence in the instant case, the judge entered findings of fact and
conclusions of law. In her findings, which are supported by the record, the judge found that
Appellant owned and resided in the mobile home when Rhodes and the other officers approached
and knocked on his door. She found by clear and convincing evidence that Appellant gave the
officers consent to enter the mobile home to search for stolen guns.


 The judge concluded that
Appellant knowingly, freely, and voluntarily gave his consent to have his mobile home searched. 
Considering the testimony of the officers regarding Appellant’s consent and giving proper deference
to the trial court’s findings on this issue, we hold that the State proved by clear and convincing
evidence that Appellant consented to the search of the mobile home. Appellant’s first issue is
overruled.
            In his second issue, Appellant contends that even if he did give consent to have his mobile
home searched for guns, the officers exceeded the scope of his consent.
            A search without a warrant must be strictly circumscribed by the exigencies which justify its
initiation. State v. Bagby, 119 S.W.3d 446, 451 (Tex. App.–Tyler 2003, no pet.) (citing Mincey v.
Arizona, 437 U.S. 385, 393, 98 S. Ct. 2408, 2413, 57 L. Ed. 2d. 290 (1978)). Once law enforcement
has begun a consensual search, it can continue until that consent is withdrawn. See Florida v.
Jimeno, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803, 114 L. Ed. 2d 297 (1991). In this case,
Linthicum testified that Appellant continued to lead the officers throughout the mobile home looking
for loaded guns until all five had been located. This is evidence that Appellant consented to the
continued search. See Martinez v. State, 29 S.W.3d 609, 612 (Tex. App.–Houston [1st Dist.] 2000,
pet. ref’d).
            It was during Appellant’s trip to the bedroom where Linthicum was standing in front of the
couch that Creath spotted the methamphetamine and drug paraphernalia in plain view. Any items
the officers observed in plain view prior to the expiration of the search for guns were properly seized. 
See Bagby, 119 S.W.3d at 451 (citing Beaver v. State, 106 S.W.3d 243, 249 (Tex. App.– Houston
[1st Dist.] 2003, no pet.)) (officers may seize evidentiary items found in plain view if the following
two requirements are met: 1) the initial intrusion was proper, or the police had a right to be where
they were when the discovery was made; and 2) it was immediately apparent to the police that they
had evidence before them). The trial judge found that the methamphetamine and drug paraphernalia
in plain view could be seized and that items under the control of Linthicum and Appellant could be
seized and inspected. Therefore, there was approval to search the items in the bedroom where
Linthicum was found and in the adjoining closet where she had placed her clothes. See Jimeno, 500
U.S. at 251-52, 111 S. Ct. at 1804. Appellant’s second issue is overruled.
            In his third issue, Appellant contends that the trial court abused its discretion when it did not
grant his motion to suppress because the officers discovered the methamphetamine as a result of an
illegal custodial interrogation. A defendant may not be prosecuted based on statements stemming
from custodial interrogation without proper warnings of constitutional rights against self
incrimination. See Miranda, 384 U.S. at 444, 86 S. Ct. at 1612. By custodial interrogation, we
mean questioning initiated by law enforcement officers after a person has been taken into custody
or otherwise deprived of his freedom in any significant way. Id. A person is in custody only if,
under the circumstances, a reasonable person would believe that his freedom of movement was
restrained to the degree associated with a formal arrest. Dowthitt v. State, 931 S.W.2d 244, 254
(Tex. Crim. App. 1996) (citing Stansbury v. California, 511 U.S. 318, 322-325, 114 S. Ct. 1526,
1528-1530, 128 L. Ed. 2d 293 (1994)). 
            Here, the trial judge made a finding that the statements made by Appellant and Linthicum
regarding the guns and methamphetamine, respectively, were made when they were not in custody. 
The evidence supports that finding. Appellant had consented for the officers to follow him around
the mobile home to look at the loaded guns located throughout. During this consent search, the
officers spotted methamphetamine and drug paraphernalia in plain view while Linthicum was
standing nearby in the bedroom. There was nothing during this initial search of the mobile home
to indicate to Linthicum that she was either in custody or about to be arrested. Appellant testified
the officers were in the mobile home no more than five minutes before Linthicum began speaking
to them about the location of the methamphetamine. Therefore, her statements to officers regarding
the location of the methamphetamine, drug paraphernalia and $3,970.00 in cash were made before
she would have reasonably believed that she was in custody. All but 10.37 of the 423.85 grams of
methamphetamine found in the mobile home came from the locations revealed in the bedroom by
Linthicum. Appellant’s third issue is overruled.


Evidentiary Sufficiency
            In his fourth and fifth issues, Appellant argues that the evidence fails to show that he
exercised care, custody, control, or management of the methamphetamine, and is, therefore, legally
and factually insufficient to support his conviction for a first-degree felony. The State disagrees and
contends that there were sufficient affirmative links showing that Appellant exercised control over
the methamphetamine found in the mobile home for a rational jury to determine that he was guilty
of the offense.
Standard of Review 
            “Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction.” Escobedo v. State, 6 S.W.3d 1, 6 (Tex.
App.–San Antonio 1999, no pet.) (citing Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781,
2787-88, 61 L. Ed. 2d 560 (1979)). The standard of review is whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; LaCour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). The evidence
is viewed in the light most favorable to the verdict. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789;
LaCour, 8 S.W.3d at 671. The conviction will be sustained “unless it is found to be irrational or
unsupported by more than a ‘mere modicum’ of the evidence.” Moreno v. State, 755 S.W.2d 866,
867 (Tex. Crim. App. 1988). The jury is the sole judge of the credibility of witnesses and of the
weight to be given their testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). 
Any reconciliation of conflicts and contradictions in the evidence is entirely within the jury’s
domain. Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). 
            If the reviewing court determines that the evidence is legally sufficient to support the verdict,
the court then proceeds with a review of the factual sufficiency of the evidence. Clewis v. State, 922
S.W.2d 126, 133 (Tex. Crim. App. 1996). In reviewing the factual sufficiency of the evidence, a
court examines all the evidence “without the prism of ‘in the light most favorable to the
prosecution.’. . . [and] sets aside the verdict only if it is so contrary to the overwhelming weight of
the evidence as to be clearly wrong and unjust.” Id. at 134. The court determines whether a neutral
review of all the evidence, both for and against the verdict, establishes that the proof of guilt is so
manifestly weak as to undermine faith in the jury’s resolution, or the proof of guilt, although
sufficient if taken alone, is greatly offset by conflicting proof. Johnson v. State, 23 S.W.3d 1, 11
(Tex. Crim. App. 2000).
            The reviewing court should exercise proper deference to the fact finder’s conclusions, and
should avoid substituting its judgment for that of the fact finder absent facts which establish that the
evidence is factually insufficient so as to render the verdict wrong or manifestly unjust, or against
the great weight and preponderance of the available evidence. Id. at 7. Any examination of the
evidence should not substantially infringe upon the fact finder’s role as the exclusive judge of the
weight and credibility given to witness testimony. Id.; Clewis, 922 S.W.2d at 133. A wrong or
unjust verdict is one that is “manifestly unjust,” or “shocks the conscience,” or “clearly demonstrates
bias.” Santellan v. State, 939 S.W.2d 155, 165 (Tex. Crim. App. 1997). The reviewing court
examines all of the evidence in the record pertaining to the factual sufficiency challenge, not just
evidence confirming the verdict. Id. at 164. Where supported by the record, a reviewing court
defers to a jury’s determination on any conflicting evidence that depends upon an evaluation of the
demeanor and credibility of the witnesses due to the jury’s opportunity to observe that testimony,
as opposed to a reviewing court’s limitation to the cold transcript of the witnesses’ testimony.
Johnson, 23 S.W.3d at 8; Van Zandt v. State, 932 S.W.2d 88, 96 (Tex. App.–El Paso 1996, pet.
ref’d).
            In a criminal conviction, sufficiency of the evidence is determined by the elements of the
crime as defined by the hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997). The correct charge “would be one that accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the State’s burden of proof or
unnecessarily restrict the State’s theories of liability, and adequately describes the particular offense
for which the defendant was tried.” Id.
Elements of the Offense
            In this case, Appellant was convicted for possession of a controlled substance,
methamphetamine, in the amount of over 400 grams. The elements of the offense are that (1) a
person (2) knowingly or intentionally (3) possesses (4) a controlled substance listed in Penalty Group
1, which includes methamphetamine. Tex. Health & Safety Code Ann. §§ 481.102(6),
481.115(a) (Vernon 2003 & Supp. 2004). To support a conviction for possession of a controlled
substance, the State must prove that (1) the accused exercised actual care, control, or custody over
the substance, and (2) the accused was conscious of his connection with the substance and knew
what it was. Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). The evidence may be
direct or circumstantial. Id. Regardless, the evidence must establish that “the accused’s connection
with the drug was more than just fortuitous.” Id.; Roberts v. State, 963 S.W.2d 894, 898 (Tex.
App.–Texarkana 1998, no pet.).
            The State may prove that a person “knowingly” possessed a controlled substance by
introducing evidence that positively links the accused to the contraband. Brown, 911 S.W.2d at 747. 
The nexus need not eliminate every other “outstanding reasonable hypothesis” except the accused’s
guilt. Id. at 748. If the accused is not in sole control of the location where the drugs are discovered,
additional links must be revealed between the accused and the controlled substances. Villegas v.
State, 871 S.W.2d 894, 896 (Tex. App.–Houston [1st Dist.] 1994, pet. ref’d) (citing Cude v. State,
716 S.W.2d 46, 47 (Tex. Crim. App. 1986)). An “affirmative link” is not a legal rule, but simply
a shorthand method of proving that the accused possessed the contraband knowingly or intentionally. 
Roberson v. State, 80 S.W.3d 730, 735 (Tex. App.–Houston [1st Dist.] 2002, pet. ref’d). The
quantity of factors is less decisive than the reasonable impact of the factors in substantiating the
elements of the offense. Gilbert v. State, 874 S.W.2d 290, 298 (Tex. App.–Houston [1st Dist.] 1994,
pet. ref’d); see also Wallace v. State, 932 S.W.2d 519, 524 (Tex. App.–Tyler 1995, pet. ref’d).
            Factors which may be considered in developing an affirmative link between the accused and
the contraband include: (1) whether the accused was present when the search warrant was executed;
(2) whether there was contraband in plain view; (3) whether the accused was in proximity to the
contraband; (4) whether the accused had access to the narcotic; (5) whether the accused was under
the influence of narcotics when arrested; (6) whether the accused possessed other contraband or
narcotics when arrested; (7) whether there was an odor of contraband; (8) whether there was
contraband or drug paraphernalia present; (9) whether the accused owned or had the right to possess
the place where drugs were found; (10) whether the location of the contraband was enclosed; (11)
whether the amount of contraband was large enough to indicate the accused knew of its existence;
(12) whether the conduct of the accused indicated a consciousness of guilt; (13) whether the accused
had a special connection to the contraband; and (14) whether there was a relationship between the
location of the contraband and the accused’s personal belongings. Roberson, 80 S.W.3d at 735 n.2;
Roberts, 963 S.W.2d at 898; Kyte v. State, 944 S.W.2d 29, 31 (Tex. App.–Texarkana 1997, no pet);
Villegas, 871 S.W.2d at 896-97.
Analysis
            Appellant owned the mobile home where the methamphetamine was discovered. He and
Linthicum had slept in the bedroom where all but 10.37 of the 423.85 grams of methamphetamine
were found. He and Linthicum testified that there had been methamphetamine use in the mobile
home the two previous nights. Drug paraphernalia was present when the methamphetamine was
discovered and personal items of Appellant, including a calendar found with the drug paraphernalia,
directly linked him to it. Appellant also conceded the $3,970.00 in cash, found in the couch with
methamphetamine and drug paraphernalia, was his. Further, he conceded that he owned the 3.3
grams of methamphetamine found in Linthicum’s purse. Therefore, viewing the evidence in the light
most favorable to the jury’s verdict, we conclude that a rational trier of fact could have found the
elements of possession of a controlled substance beyond a reasonable doubt. See Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Brown, 911 S.W.2d at 747. Accordingly, Appellant’s fourth issue is
overruled.
            Having determined that the evidence is legally sufficient to support the verdict, we address
factual sufficiency. We must conduct a neutral review of all of the evidence in our evaluation of
factual sufficiency. Johnson, 23 S.W.3d at 11. In conducting our review, we note that Appellant
stated that he had only been in the mobile home for the past two nights before the discovery of the
methamphetamine by law enforcement officials. Appellant testified that he had allowed his brother
Bobby to use the mobile home for the past two months. In fact, testimony showed that Bobby had
even made a payment on the mobile home, even though title still was in the name of Appellant. 
However, the evidence at trial also showed that Appellant conceded that he obtained 
methamphetamine from his brother Bobby for free. Further, he had been working with Bobby in
Bobby’s shop near Appellant’s mobile home for the two days prior to the discovery of the
methamphetamine by law enforcement officials. Reviewing the entire record, both for and against
the jury’s verdict, we do not find that proof of Appellant’s guilt is so manifestly weak as to
undermine faith in the jury’s resolution, or that the proof of guilt, although sufficient if taken alone,
is greatly offset by conflicting proof. See id. Accordingly, Appellant’s fifth issue is overruled.
 
Conclusion
            Based upon our review of the record, we conclude that the trial court did not err in denying
Appellant’s motion to suppress. Further, we hold that the evidence is both legally and factually
sufficient to support the jury’s verdict that Appellant was guilty of possession of a controlled
substance, methamphetamine, in an amount of more than 400 grams. Accordingly, the judgment of
the trial court is affirmed.

                                                                                                     JAMES T. WORTHEN 
                                                                                                                 Chief Justice


Opinion delivered May 28, 2004.
Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.









(DO NOT PUBLISH)